[L. A. No. 1196.    Department Two.—April 1, 1904.]

## CITY OF SANTA BARBARA, Respondent, v. ALFRED DAVIS, Appellant, and WALTER J. STAFFORD, Intervener, Appellant.

MUNICIPAL CHARTER—POWER OF CITY COUNCIL—PURCHASE OF SITE FOR ENGINE-HOUSE—PRESUMPTION OF GOOD FAITH—MANDAMUS.—Where the charter of a city authorizes it to acquire land necessary or convenient for municipal purposes, the city council may purchase land declared to be necessary and convenient as a site for a fire-engine-house; and where there is nothing in the charter requiring it, the city council need not include in the ordinance for the purchase a provision for the building, nor declare their intention in reference thereto further than is indicated by the purchase of a site for that purpose. It must be presumed that the city council has acted, and will act, in good faith; and their decision and declaration as to the necessity of the purchase for such site is not open to review by the city clerk or by a taxpayer. *Mandamus* will lie to compel the city clerk to draw his warrant for the purchase money, as provided in the ordinance.

APPEAL from a judgment of the Superior Court of Santa Barbara County.    W. S. Day, Judge.

The facts are stated in the opinion.

Canfield & Starbuck, for Appellants.

Henley C. Booth, for Respondent.

GRAY, C.—An application was made in the court below by the plaintiff city for a writ of mandate to compel the city clerk, Davis, to indorse the action of plaintiff's city council in allowing the claim of Mercedes Gutierrez for sixteen hundred dollars for the agreed purchase price of a site for a fire-engine-house, upon said claim, and issue his warrant for said amount. The writ was granted, and the defendant, Davis, appeals. Stafford, who intervened as a taxpayer, also appeals.

The position of both the defendant and the intervener is, that the plaintiff's charter does not authorize the purchase of land for buildings which its council may or may not thereafter determine to build, but only for buildings which the council has already actually and definitely determined to build, and that in this case no determination of the council actually to build the engine-house mentioned in the ordinance is shown.

The provisions of the charter relating to the subject are as follows: "Said corporation shall have power: . . . 4. To acquire, receive, hold, and enjoy real and personal property within and without its territory, necessary, or convenient for municipal purposes, or for the exercise of the powers granted to said corporation, and sell, convey, and dispose of the same for the common benefit." (Stats. 1899, sec. 4, p. 451.) Again it is provided: "The council shall have the power by ordinance: . . . 36. To provide and maintain all public buildings, parks, or squares, necessary or proper for the use of the city, and to acquire lands therefor, and for other public uses within or without the city." (Stats. 1899, sec. 43, pp. 457, 460, sub-sec. 36.)

The council of said city duly adopted an ordinance which recited the public necessity of purchasing a certain lot of land belonging to Mercedes Gutierrez, particularly described said land, and went on to recite as follows: "That said public interest, convenience, and necessity demand and require said purchase of said lot of land for the purpose of erecting thereon a building for said city, to wit, a municipal-building site which shall accommodate and be sufficient for a building to house and protect the fire-engine, hose-cart, and horses therefor belonging to said city, and such further fire appliances as may now be owned or shall hereafter be acquired for said city; that said city does not now own or control a lot of land

therein which is suitable or proper or which can legally be used for the building or erection of a municipal building for the purposes hereinabove specified; that the ground floor of the city hall of said city now being used for said purposes is unsuitable and inadequate therefor; that said city can acquire said lot of land in no other way than by purchase, and said city can acquire no lot of land suitable for the above-specified purpose other than by a purchase, and that the sum of sixteen hundred dollars ($1,600) is a fair, reasonable, and just sum to be paid for the lot of land hereinabove described.''

The ordinance then goes on to recite that the owner of the lot has deposited with the city clerk a deed for said lot to said city, and provides for the payment of the consideration of sixteen hundred dollars on presentation of a certificate of the city attorney as to the title and a verified demand against the city from said owner presented and passed upon as provided by law.

Beyond any question this is an ordinance for the purchase of the land.

The purpose for which the land is to be purchased clearly appears from the ordinance.

There is nothing in the quoted provisions of the city charter that requires the city council to provide a building or to provide for a building or even to declare an intention to construct a building before purchasing a site for a building found by them to be a public necessity and convenience for the city. In the natural order of things, the procurement of a site for a building is the first step preparatory to the construction of a building, and in the absence of any statutory direction to that effect we can see no good reason why a city council should be required to precede the provision of a site for a building with any other provision concerning such building. It will in the nature of things be time enough to provide the building as well as to provide further for the building after the site for it shall have been secured.

We do not attempt to reply to the arguments of appellant in detail, but content ourselves with saying that whether the rule of construction applied to the charter of the city be strict or liberal, there is nothing in it that can reasonably be construed to mean that the power of the council to provide a

site for any municipal building shall be conditioned or dependent upon their previously, or at the same time, making any provision for the erection of a building upon such site or upon their making any record of their intention or decision to erect such building. It will be presumed that the council has acted, and will act, in good faith, and their decision and declaration that public necessity demands the purchase of the lot of land "for the purpose of erecting thereon a building for said city" is not open to review by the city clerk or any other city officer. Nor is it open to attack by said clerk or by a taxpayer on any such ground as that the city council did not in fact intend to carry out the purpose of the purchase as clearly indicated by the ordinance itself, to at some future time erect a building upon the land. The allegation of the intervener's complaint to the effect that the city and city council did not intend to erect any building on the lot at the time the ordinance was passed is immaterial. The city can only act in the matter by ordinance duly passed, and the material question is, not what they intended to do, but what did they do by ordinance. Their intention appears, so far as is necessary to be shown, from the ordinance. The allegation of intervener's complaint that the city had not provided for any building was also immaterial for reasons already stated. Findings as to those allegations were also immaterial.

We advise that the judgment be affirmed.

Chipman, C., and Smith, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.

McFarland, J., Henshaw, J., Lorigan, J.

Hearing in Bank denied.