Filed 9/17/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DEFEND OUR WATERFRONT,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>CALIFORNIA STATE LANDS<br>COMMISSION et al.,<br><br>     Defendants and Appellants;<br><br>SAN FRANCISCO WATERFRONT<br>PARTNERS II, LLC et al.,<br><br>     Real Parties in Interest and<br>     Appellants. | A141696 & A141697<br><br>(San Francisco City & County<br>Super. Ct. No. CPF-12-512509) |

**I.**

**INTRODUCTION**

In this case, we address a discrete dispute arising out of the controversial "8 Washington Street Project," a plan to develop waterfront land near the San Francisco Ferry Building. The site for the project includes a parcel of property commonly referred to as "Seawall Lot 351," which is currently owned by the City and County of San Francisco through its Port Commission (the City), subject to the public trust for uses benefiting the people of California. The public trust restriction on the use of Seawall Lot 351 is inconsistent with the 8 Washington Street Project as conceived by the project developers, real parties in interest San Francisco Waterfront Partners II, LLC and Pacific Waterfront Properties LLC (the Developers). To remove this inconsistency, the Developers and the City devised a plan to transfer Seawall Lot 351 out of the public trust

1

and replace it with a different parcel of property pursuant to a land exchange agreement with the State Lands Commission (the SLC).[1]  In August 2012, the SLC approved the Seawall Lot 351 land exchange agreement, finding, among other things, that the agreement is a statutorily exempt activity under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.).[2]

Defend Our Waterfront (respondent) brought this suit to challenge the SLC's reliance on a CEQA exemption which applies to "settlements of title and boundary problems by the State Lands Commission and to exchanges or leases in connection with those settlements."  (§ 21080.11.)  The trial court granted respondent's petition for a writ of mandate, finding that the proposed land exchange agreement is not statutorily exempt from CEQA review.  The SLC, the City, and the Developers (collectively appellants) contend the judgment must be reversed because (1) respondent failed to exhaust its administrative remedies; and (2) the Seawall Lot 351 land exchange agreement is exempt from CEQA review.  We affirm.

## II.
## STATEMENT OF FACTS

### A.  Seawall Lot 351

Seawall Lot 351 is an approximately 23,000-square foot triangle-shaped parcel of land located near the corner of Washington Street and the Embarcadero, in close proximity to the San Francisco Ferry Building.  Presently, Seawall Lot 351 is used as a surface parking lot serving the Ferry Building and surrounding facilities pursuant to a

---

[1]  "The [SLC] is composed of the Lieutenant Governor, the State Controller, and the Director of Finance.  (Pub. Resources Code, § 6101.)  It has exclusive jurisdiction over all tidelands and submerged lands owned by the state (and not previously granted by it to counties, cities, and others), including beds of navigable rivers, streams, lakes, bays, estuaries, inlets and straits.  (*Id*., § 6301.)"  (*Western Oil & Gas Assn. v. State Lands Com.* (1980) 105 Cal.App.3d 554, 557.)

[2]  All further statutory references are to the Public Resources Code unless otherwise specified.

lease agreement between the City and the Ferry Building's management company. However, Seawall Lot 351 was once tide and submerged land under the San Francisco Bay. California acquired title to tide and submerged lands within its borders when it became a state in 1850. State ownership of these lands was "subject to the public trust," for commerce, navigation, fisheries and other recognized uses.[3]

In the late 1870's, a new seawall was constructed on the waterside of an existing seawall originally built along the San Francisco waterfront, and the area between the two walls was filled. The filled land, which included Seawall Lot 351, retained the title of tide and submerged lands owned by the State in its sovereign capacity, subject to the public trust.

In 1968, the City acquired title to Seawall Lot 351 when the Legislature passed the Burton Act, pursuant to which it granted to the City sovereign lands within the City and County of San Francisco. (Stats. 1968, ch. 1333.) These granted lands remained subject to the public trust and were also subject to the terms of a statutory trust imposed by the Burton Act.

Today, Seawall Lot 351 is in an area covered by the Port of San Francisco Waterfront Land Use Plan (the WLUP), which the City adopted in order to "identify development opportunities that allow the Port to promote Trust uses while maximizing revenues from property no longer useful for Trust purposes through other compatible development." In the City's view, Seawall Lot 351 does not currently allow for development in furtherance of goals established by the WLUP because of its small size and irregular configuration.

---

[3] California "succeeded to title in the tidelands within its borders not in its proprietary capacity but as trustee for the public. [Citations.] Although early cases expressed the scope of the public's right in tidelands as encompassing navigation, commerce and fishing, the permissible range of public uses is far broader, including the right to hunt, bathe or swim, and the right to preserve the tidelands in their natural state as ecological units for scientific study. [Citation.]" (*City of Berkeley v. Superior Court* (1980) 26 Cal.3d 515, 521.)

## B. The 8 Washington Street Project

The 8 Washington Street Project is a planned waterfront development consisting of up to 134 condominiums, 389 subsurface parking spaces, restaurants, retail establishments, and a tennis and swim club. The development site includes property commonly referred to as the 8 Washington Property, which is currently used as a privately owned swim and tennis club. The Developers of the 8 Washington Street Project hold an option to purchase the 8 Washington Property.

Seawall Lot 351 is immediately adjacent to the 8 Washington Property and is part of the development site for the 8 Washington Street Project. The Developers made a proposal to acquire Seawall Lot 351 from the City in exchange for a comparable section of the 8 Washington Property (the 8 Washington parcel), an upfront payment of $3 million, and future payments of a percentage of transfer fees that will be imposed on condominium unit sales within the development area. The proposal also requires the City to lease the 8 Washington parcel back to the Developers so that it can be improved as part of the overall 8 Washington Street Project.

## C. The Proposed Land Exchange Agreement

To remove impediments to the development of the 8 Washington Street Project resulting from the public trust restriction on Seawall Lot 351, the City has proposed a "land exchange agreement" with the State of California pursuant to which the SLC would exercise its authority under chapter 310 of the Statutes of 1987 and the California Constitution to terminate public trust interests in Seawall Lot 351. The record does not disclose precisely when or how the land exchange plan originated. At least by October 2008, the Developers and the City were considering a "trust exchange." Three years later, in October 2011, the City met with the SLC about the proposal and submitted a draft land exchange agreement. A "final draft" of the proposed agreement (the draft agreement) is dated August 13, 2012.

The draft agreement reflects that the proposed exchange is part of broader plan for the development of the 8 Washington Street Project. The agreement provides that, after

4

the Developers transfer the 8 Washington parcel to the City, the following transactions will take place: (1) the City will convey Seawall Lot 351 and the 8 Washington parcel to the SLC; (2) the SLC will terminate the public trust interests in Seawall Lot 351 and then convey it back to the City free of the trust; (3) the SLC will impress the 8 Washington parcel with the public trust and convey it back to the City as trustee. The draft agreement also contemplates that after the land exchange is completed, the City will convey Seawall Lot 351 to the Developers pursuant to a separate agreement. The stated purpose of the exchange proposed by the draft agreement between the City and the SLC is to "allow non-trust uses to be developed on lands formerly encumbered by the Trust, thereby settling a title problem."

### D. The SLC Hearing

The land exchange agreement was scheduled for consideration at an August 14, 2012 meeting of the SLC. The agenda for the meeting was posted on the SLC website on August 1. The City's request for SLC approval of the Seawall Lot 351 land exchange agreement was calendared as "Regular Calendar [Item] 103" (Calendar Item 103) and was described as follows:

"PORT OF SAN FRANCISCO, CALIFORNIA STATE LANDS COMMISSION (PARTIES): Consider a Land Exchange Agreement between the State of California, acting by and through the Commission, and the City and County of San Francisco, acting by and through the Port of San Francisco, involving certain parcels of land located within Seawall Lot 351 and the 8 Washington Street property, [C]ity of San Francisco, County of San Francisco. The result of the proposed Agreement would be to terminate any and all public trust and sovereign property rights in approximately .52 acres of filled tidelands and acquisition by the Port, as trustee, of approximately .54 acres of certain other lands."

On August 7, 2014, the SLC added a hyperlink to its August 14 meeting agenda which gave access to a SLC staff report recommending approval of the land exchange agreement. The staff report included a description of the proposed exchange agreement, background information about the 8 Washington Street Project, a summary of legal

5

requirements for terminating the state's public trust interests in Seawall Lot 351, an analysis in support of the staff's approval recommendation, and a list of other "pertinent" information about the 8 Washington Street Project. The staff report also included a set of recommended findings, the first of which pertained to CEQA and stated: "Find that the activity is exempt from the requirements of CEQA pursuant to Title 14, California Code of Regulations, section 15061 as a statutorily exempt project pursuant to Public Resources Code Section 21080.11, settlement of title and boundary problems and to exchanges or leases in connection with those settlements."

A transcript of the August 14, 2012 SLC meeting reflects that when Calendar Item 103 was called, SLC Chief Counsel Jennifer Lucchesi presented a slide show presentation in support of the land exchange agreement. Lucchesi underscored that "it's important to note the Commission is not being asked to approve any proposed development projects involving this property, only a land exchange pursuant to a 1987 statute." Without making any reference to CEQA, Lucchesi ended her presentation with the following recommendation: "Based on the information submitted to the Commission and the information contained in the staff report, this presentation, and the testimony provided to you today, staff recommends that the Commission make the requisite findings detailed in this presentation and the staff report in addition to a finding that the agreement will not create a substantial interference with public rights of navigation and fishing." After Lucchesi completed her presentation, proponents and opponents of the land exchange agreement expressed their views. Ultimately, the SLC approved the staff recommendation, with two members voting in favor of the land exchange agreement and one abstaining.

On August 21, 2012, a "Notice of Exemption" was filed with the State Clearinghouse,[4] which reflected that the SLC approved the land exchange agreement

---

[4] The State Clearinghouse coordinates state agency review of CEQA documents, and is managed by the Governor's Office of Planning and Research.

6

proposed by the City. The Notice also states that the land exchange agreement "is a statutorily exempt activity in accordance with CEQA."

### E. The Mandate Proceeding

On September 25, 2012, respondent filed a petition for writ of mandate challenging the SLC decision to approve "an exchange of Seawall Lot 351 for non-trust parcels located at 8 Washington Street" without requiring CEQA review. According to the petition allegations, respondent is a nonprofit unincorporated public interest association of individuals and groups that was formed in September 2012, after the SLC approved the land exchange agreement. Respondent alleged that members of its association, "including the non-profit association Friends of Golden Gateway (FOGG), objected to the State Lands Commission's approval of the 8 Washington/Seawall Lot 351 land exchange agreement and exhausted administrative remedies."

Respondent further alleged that the SLC abused its discretion and failed to proceed in the manner required by law by approving the land exchange agreement that terminated the State's sovereign public trust interests in Seawall Lot 351 and exchanged that parcel for other property located at the 8 Washington Street Project site based on a claimed statutory exemption from CEQA for SLC "settlements of title and boundary problems." (See § 21080.11.) According to respondent, this statutory exemption does not apply as a matter of law "because there is neither a title or boundary dispute nor settlement of any such dispute relating to Seawall Lot 351 held in public trust. Instead, the purpose of the land exchange agreement is to promote the 8 Washington luxury condominium project."

Appellants opposed the mandate petition on two grounds. First, they argued that respondent failed to exhaust its administrative remedies because it did not raise its CEQA objection at the August 14, 2012 SLC meeting. (See § 21177.) Second, appellants argued the SLC approval of the land exchange agreement was statutorily exempt from CEQA notwithstanding the absence of a title or boundary "dispute." (See § 21080.11.)

On January 10, 2014, the trial court found that exhaustion of administrative remedies requirements imposed by CEQA do not apply in this case because there was no

7

effective notice of a public hearing on a CEQA matter prior to the SLC ruling. (See § 21177, subd. (e).)

On January 17, the court granted the mandate petition, ruling that the section 21080.11 statutory exemption "is not applicable to the exchange agreement for seawall lot 351" and, "[a]ccordingly, the exchange agreement is not exempt from CEQA review." The court's findings included: (1) the statutory language in section 21800.11 is clear and unambiguous; (2) in light of the clear statutory language, the agency action is not entitled to deference; (3) the exchange agreement is not a "settlement[] of title and boundary problems" by the SLC as required for section 21080.11 to apply; and (4) the legislative history of the statutory exemption does not compel a different conclusion.

## III.

## DISCUSSION

### A. Exhaustion of Administrative Remedies

Appellants contend the trial court should have dismissed the mandate petition without reaching its merits because respondent failed to comply with section 21177 of CEQA, which they characterize as a standing statute, but which is actually an exhaustion of administrative remedies statute. (*Citizens for Open Government v. City of Lodi* (2006) 144 Cal.App.4th 865, 875, fn. 8 (*City of Lodi*); see also *Tomlinson v. County of Alameda* (2012) 54 Cal.4th 281, 291 (*Tomlinson*).) "We apply a de novo standard of review to the legal question of whether the doctrine of exhaustion of administrative remedies applies in a given case. [Citations.]" (*City of Lodi*, *supra*, 144 Cal.App.4th at p. 873.)

"The exhaustion of administrative remedies doctrine 'bars the pursuit of a judicial remedy by a person to whom administrative action was available for the purpose of enforcing the right he seeks to assert in court, but who has failed to commence such action and is attempting to obtain judicial redress where no administrative proceeding has occurred at all; it also operates as a defense to litigation commenced by persons who have been aggrieved by action taken in an administrative proceeding which has in fact occurred but who have failed to 'exhaust' the remedy available to them in the course of

8

the proceeding itself.' [Citation.] As our Supreme Court has stated it: 'In brief, the rule is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act.' [Citation.] The rule is a jurisdictional prerequisite in the sense that it 'is not a matter of judicial discretion, but is a fundamental rule of procedure laid down by courts of last resort, followed under the doctrine of stare decisis, and binding upon all courts.' [Citations.]" (*City of Lodi*, *supra*, 144 Cal.App.4th at p. 874.)

The exhaustion of administrative remedies rules for CEQA are codified in section 21177. For clarity sake, we will refer to the following provisions of section 21177 by their subdivision designations:

"(a) An action or proceeding shall not be brought pursuant to Section 21167 unless the alleged grounds for noncompliance with this division were presented to the public agency orally or in writing by any person during the public comment period provided by this division or prior to the close of the public hearing on the project before the issuance of the notice of determination.

"(b) A person shall not maintain an action or proceeding unless that person objected to the approval of the project orally or in writing during the public comment period provided by this division or prior to the close of the public hearing on the project before the filing of the notice of determination pursuant to Sections 21108 and 21152.

"(c) This section does not preclude any organization formed after the approval of a project from maintaining an action pursuant to Section 21167 if a member of that organization has complied with subdivisions (a) and (b). The grounds for noncompliance

9

may have been presented directly by a member or by a member agreeing with or supporting the comments of another person.[5]

"........................................................

"(e) This section does not apply to any alleged grounds for noncompliance with this division for which there was no public hearing or other opportunity for members of the public to raise those objections orally or in writing prior to the approval of the project, or if the public agency failed to give the notice required by law."

Considering these provisions in order, subdivision (a) requires a showing that someone presented the CEQA objection to the agency before its decision was made. (*City of Lodi*, *supra*, 144 Cal.App.4th at p. 875 ["the issues raised before a court must first have been raised during the administrative process, although not necessarily by the person who subsequently seeks judicial review"].) Here, the attorney for the Ferry Building management company appeared at the August 14 meeting and objected to the land exchange agreement on several grounds including that the project was not statutorily exempt from CEQA under section 21080.11, which is the precise basis for the mandate petition in this case.

Subdivision (b) requires that the petitioner must have objected to the project on some ground before the agency made its decision. (*Woodward Park Homeowners Assn.,*

---

[5] Prior to a 2010 amendment, subdivision (c) did not make reference to subdivision (a)—it stated that an organization formed after the approval of a project could pursue a CEQA challenge against an agency in a judicial proceeding provided that one of its members complied with subdivision (b). (Former § 21177, subd. (c); see, e.g., *Garrison v. Board of Directors* (1995) 36 Cal.App.4th 1670, 1677 [former subd. (c) "places no limitations on the formation of organizations for CEQA litigation other than requiring that one member of an organization comply with subdivision (b) of the statute"].)

The 2010 amendment to subdivision (c) which added language explicitly requiring after-formed organizations to comply with subdivision (a), as well as with subdivision (b), will remain in effect at least until 2016. (Subd. (f) ["This section shall remain in effect only until January 1, 2016, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2016, deletes or extends that date."].)

*Inc. v. City of Fresno* (2007) 150 Cal.App.4th 683, 711 [" petitioner itself need only have raised some objection before the agency [citation]; if it has, it may then litigate any issue raised before the agency by anyone"].)  Here, although respondent was formed after the SLC decided the matter, former San Francisco City Attorney Louise Renne appeared at the August 14 meeting and opposed the project on behalf of FOGG, a group that subsequently became a member of respondent.

Subdivision (c) also potentially applies in this case because respondent was formed after the SLC issued its decision.  To satisfy subdivision (c), respondent was required to comply with both subdivisions (a) and (b).  Appellants concede that Louise Renne's objection to the project satisfied subdivision (b), but they interpret subdivision (c) as modifying the statutory language in subdivision (a) in cases involving after-formed organizations.  According to appellants, such a party cannot rely on another party's CEQA objection, but must establish that one of its own members raised the precise issue that it wants to raise in court.  Thus, appellants contend that the mandate petition should have been dismissed because the Ferry Building management company that raised the CEQA objection at the August 14 meeting is not a member of respondent's organization.

Subdivision (c) is not a model of clarity.  The language requiring an after-formed organization to comply with subdivisions (a) and (b) could simply mean that the group must satisfy subdivision (a) by showing that someone raised the CEQA objection, and that it must also satisfy subdivision (b) by showing that someone from its organization objected to the project on any basis.  On the other hand, appellants assert that the second sentence of subdivision (c) requires that a member of the after-formed organization must have raised, at least indirectly, the CEQA issue during the agency proceeding.  Assuming for purposes of this appeal that appellants' interpretation of subdivision (c) is correct, we nevertheless conclude that the exhaustion doctrine does not bar this court action because, as the trial court found, subdivision (e) excepts the respondent from the exhaustion of remedies requirement imposed by subdivision (a).

11

As reflected in its statutory language, "application of subdivision (a)'s exhaustion-of-administrative-remedies provision requires either (1) a public comment period provided by CEQA (the public comment provision) or (2) an opportunity for public comment at public hearings before issuance of a notice of determination (the public hearing provision)." (*Tomlinson*, *supra*, 54 Cal.App.4th at p. 289.) In the present case, subdivision (a)'s public comment provision does not apply because "CEQA does not provide for a public comment period preceding an agency's exemption determination. [Citation.]" (*Id*. at p. 289.) Thus, only the public hearing provision of subdivision (a) is applicable here. Therefore, in order for appellants to prevail on their claim that respondent failed to exhaust its remedy by raising their CEQA objection at a public hearing, subdivision (e) requires that the public hearing affording that opportunity be properly noticed.

Appellants contend that the SLC did give the notice required by law before holding a public hearing on the land exchange agreement at its August 14 meeting. According to appellants, since CEQA does not require a noticed hearing before invoking a statutory exemption, the only applicable notice statute is Government Code section 11125, subdivision (a), which states that notice of a meeting of a "state body" shall be provided to any person who requests such notice and shall "also [be] made available on the Internet at least 10 days in advance of the meeting . . . ." Appellants maintain that the SLC complied with this notice requirement because the meeting agenda it posted on its website on August 1, 2012, informed the public of its intent to approve the land exchange agreement outlined in Calendar Item 103.

We disagree with appellants' contention because the only notice provided by the agenda for the August 14 SLC meeting was that the SLC was considering a land exchange agreement proposed by the City. The agenda did not notify anyone that the SLC would also consider invoking a statutory exemption to CEQA; nor, indeed, did it make any reference to CEQA at all. Thus, to the extent Government Code section 11125 subdivision (a) establishes what notice the SLC must provide of its intention to invoke a

12

CEQA exemption, that notice requirement was not met by posting the SLC meeting agenda.

Appellants argue that even if the website posting of the SLC meeting agenda was insufficient notice, the public received adequate notice of the SLC's intention to invoke a CEQA exemption because the SLC staff report was also available on the Internet. However, the SLC staff report did not provide legally sufficient public notice of the SLC's CEQA decision for two reasons. First, the report was made available for public review via a hyperlink that was posted on the SLC's meeting agenda which did not disclose that the SLC staff recommended consideration of a CEQA exemption. Thus, someone would have to take the additional steps of accessing and reviewing the report in order to learn that a CEQA issue would be decided at the August 14 SLC meeting. Second, and in any event, the hyperlink to the staff report was not added to the meeting agenda until August 7, and thus the report itself could not have provided the 10-days notice required by Government Code section 11125, subdivision (a).

Alternatively, appellants argue that subdivision (e) of section 21177 does not exempt respondent from the subdivision (a) exhaustion requirement because respondent had actual notice that the SLC was going to consider a CEQA exemption at the August 14 meeting. To support this contention, appellants rely on an August 13, 2012 letter that Louise Renne sent to the SLC in which she opposed the land exchange agreement both as a citizen of San Francisco and on behalf of FOGG. In that letter, Renne objected that "[t]he proposed land exchange would violate the common-law and constitutional public-trust doctrines in several respects," but she did not raise a CEQA objection to the project. Appellants contend that this letter proves that Renne had actual notice that the SLC was going to make a CEQA ruling because it contains several references to the SLC staff report for Calendar Item 103.

We disagree with appellants' alternative argument. The fact Ms. Renne referred to the SLC staff report in her August 13 letter does not prove that she read the entire report, including the cursory recommendation that the SLC invoke a statutory exemption to

13

CEQA.  More importantly, even if Ms. Renne did read the entire report, subdivision (e) does not provide that actual notice satisfies CEQA's notice requirement.  Instead, that subdivision states that the subdivision (a) exhaustion requirement applies to an agency determination after the agency has given the notice required by law.  Here, appellants contend that Government Code section 11125, subdivision (a) dictates the type of notice required by law to be given.  As we have noted above, because the SLC staff report was not linked to the SLC website 10 days before the August 14 meeting, the publication of that report could not supply the notice required by Government Code section 11125, subdivision (a).

Finally, appellants contend that respondent waived any inadequacy in the notice of the SLC's August 14 meeting because Louise Renne appeared at the meeting and could have raised a CEQA objection at that time.  This waiver theory misses the mark because the pertinent question is whether the SLC provided the required 10-days notice to the public of its intention to make a CEQA decision at the August 14 meeting.  Providing that notice at the meeting where the decision was made obviously did not satisfy the 10-day requirement.

For similar reasons, appellants mistakenly rely on *Temecula Band of Luiseño Mission Indians v. Rancho Cal. Water Dist.* (1996) 43 Cal.App.4th 425 (*Temecula*).  The issue in that case was whether an agency's notice of intent to issue a negative declaration under CEQA contained an incomplete and therefore inaccurate description of the project.  (*Id*. at pp. 433-434.)  The *Temecula* court found this issue was waived because, when the project was correctly described at the public hearing appellant did not object that the project description in the notice was inaccurate.  (*Id*. at p. 434.)  *Temecula* does not alter our conclusions here because there was no question that the appellant in that case had prior legally adequate notice of the agency's intention to make a CEQA decision.  (*Id*. at p. 431.)

Furthermore, in *Temecula*, *supra*, 43 Cal.App.4th at page 434, the court distinguished the principal case relied on by the objector—*McQueen v. Board of*

14

*Directors* (1988) 202 Cal.App.3d 1136, disapproved on another ground in *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559 (*McQueen*).  In *McQueen*, the issue was whether a regional district's plan to acquire property contaminated with PCB was exempt from CEQA review.  The *McQueen* court rejected the district's claim that the CEQA petitioner failed to exhaust his administrative remedies, finding that the project description in the district's notice of intent to invoke a CEQA exemption was so inaccurate and misleading that it was tantamount to a lack of notice.  (*Id*. at p. 1150.) Furthermore, the court found that, "[c]onsidering the manner in which the district's proposed plans . . . were publicized," the CEQA petitioner "adequately raised the objections available at the time."  (*Id*. at p. 1151.)

To the extent *Temecula* and *McQueen* support appellants' theory that the waiver doctrine can excuse an agency's failure to comply with the section 21177, subdivision (e) notice requirement, the facts here are closer to those in *McQueen*.  As noted, the agenda for the August 14, 2012 SLC meeting did not include reference to the CEQA exemption, nor was that issue ever discussed by the SLC or its staff at the hearing itself; only the issue of whether to approve the proposed land exchange agreement was discussed.  A "Notice of Exemption" was filed with the state the following week, which included a reference to the fact that the "activity" was exempt from CEQA.  One month later respondents filed their petition for writ of mandate challenging the approval of the exchange without CEQA review.  Even if inadequacies in the statutorily required notice could be waived, we conclude that no waiver occurred here.

For all these reasons, we affirm the trial court's finding that respondent's mandate petition did not violate the exhaustion of remedies doctrine.

## B.  The CEQA Exemption

### 1.  Issue Presented and Standard of Review

CEQA furthers California's environmental protection goals by establishing "a three-step process designed to assure that public agencies consider the environmental impact of their actions and decisions.  [Citations.]"  (*Save the Plastic Bag Coalition v.*

15

*City and County of San Francisco* (2013) 222 Cal.App.4th 863, 872.)  "In the first step, the public agency must determine whether the proposed development is a 'project,' that is, 'an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment' undertaken, supported, or approved by a public agency.  [Citation.]  [¶] The second step of the process is required if the proposed activity is a 'project.'  The public agency must then decide whether it is exempt from compliance with CEQA under either a statutory exemption [citation] or a categorical exemption set forth in the regulations [citations].  A categorically exempt project is not subject to CEQA, and no further environmental review is required.  [Citations.]  If the project is not exempt, the agency must determine whether the project may have a significant effect on the environment.  If the agency decides the project will not have such an effect, it must 'adopt a negative declaration to that effect.'  [Citations.]  Otherwise, the agency must proceed to the third step, which entails preparation of an environmental impact report before approval of the project.  [Citations.]"  (*Tomlinson*, *supra*, 54 Cal.4th at p. 286.)

In the present case, appellants implicitly concede that the land exchange agreement constitutes a CEQA project.  In fact, during the administrative process, the SLC and the City proceeded to the second step of CEQA by considering whether the project was exempt from review.  Thus, although the administrative record does not disclose the SLC's reasoning, we proceed on the assumption that the land exchange agreement is a "project" under CEQA, and focus our review on the question whether the SLC properly invoked a statutory exemption.

Typically, courts resolve substantive CEQA issues by determining independently whether the administrative record demonstrates any legal error by the agency and whether it contains substantial evidence to support the agency's factual determinations.  (*North Coast Rivers Alliance v. Westlands Water Dist.* (2014) 227 Cal.App.4th 832, 850.)  Thus, an "agency's finding that a statutory exemption applies to a project will be upheld if substantial evidence supports the finding of exemption.  [Citation.]"  (*Ibid.*)  "On the

16

other hand, if we are required to construe the scope of a statutory exemption, to that extent the issue becomes one of statutory interpretation to which we apply de novo review. [Citations.]" (*Id*. at p. 851.)

### 2. Analysis

"The Legislature has created a myriad of exemptions from CEQA, and such exemptions exist regardless of resulting conflicts with CEQA's environmental purposes. 'As a practical matter, the statutory exemptions have in common only this: the Legislature determined that each promoted an interest important enough to justify forgoing the benefits of environmental review.' [Citation.]" (*Bus Riders Union v. Los Angeles County Metropolitan Transportation Agency* (2009) 179 Cal.App.4th 101, 107.)

In the present case, the SLC found that the land exchange agreement is statutorily exempt from CEQA review under section 21080.11, which states: "This division shall not apply to settlements of title and boundary problems by the State Lands Commission and to exchanges or leases in connection with those settlements." As noted above, the record on appeal is silent as to how the SLC determined that the land exchange agreement falls within the scope of this exemption. In this court, appellants contend that the plain language of the exemption applies because the land exchange agreement settles a title problem by removing the public trust restrictions preventing development of Seawall Lot 351. Respondent, on the other hand, argues that the plain language of the exemption precludes its application here because the land exchange agreement is not connected to the settlement of a boundary or title dispute.

"In construing a statute 'we begin with the fundamental rule that a court "should ascertain the intent of the Legislature so as to effectuate the purpose of the law." ' [Citations.] 'An equally basic rule of statutory construction is, however, that courts are bound to give effect to statutes according to the usual, ordinary import of the language employed in framing them.' [Citations.] Although a court may properly rely on extrinsic aids, it should first turn to the words of the statute to determine the intent of the Legislature. [Citations.] 'If the words of the statute are clear, the court should not add to

17

or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' [Citations.]" (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698.)

Applying these rules, we conclude that the statutory language defining the scope of section 21080.11 is clear—it creates an exemption from environmental review for "settlements" by the SLC of title or boundary disputes and for land exchanges or leases executed in connection with "those settlements." In this context, the usual and ordinary import of the Legislature's use of the word "settlements" is that the exemption is limited to situations in which the SLC resolves a dispute regarding the title or boundaries of land subject to its jurisdiction. We recognize that section 21080.11 uses the word "problems" rather than "disputes." However, when read in context with the statutory language limiting this exemption to SLC settlements, "problems" means "disputes."

Although we have found no case directly on point, two factors reinforce our conclusion regarding the scope of this exemption. First, as appellants emphasize in their opening brief to us, section 6307 confers express authority on the SLC to enter into exchanges of filled tidelands or submerged lands for other lands or interests in land. Appellants ignore, however, that section 6307 authorizes such an exchange only under specified conditions. (§ 6307, subd. (a).) Section 6307 also requires that the exchange be for at least one of seven purposes delineated in the statute, the last of which is to "resolve boundary or title disputes." (§ 6307, subd. (c)(7).)

Second, although we have not found a case applying section 21080.11, at least one court has recognized that the purpose of this CEQA exemption is to promote the State's legitimate interest in settling land disputes. (*Burke v. California Coastal Com.* (2008) 168 Cal.App.4th 1098 (*Burke*).) In *Burke*, a homeowner filed a writ petition challenging the California Coastal Commission's jurisdiction to prevent him from rebuilding a fence separating his property from a sandy beach public easement. The *Burke* court found that the fence was exempted from the Coastal Commission's jurisdiction under section 30416, subdivision (c), a provision of the Coastal Act, which states: "Boundary settlements

18

between the State Lands Commission and other parties and any exchanges of land in connection therewith shall not be a development within the meaning of this division." (*Burke*, *supra*, 168 Cal.App.4th at p. 1106.) Characterizing the fence as a boundary settlement within the meaning of the exemption, the *Burke* court reasoned that the Legislature has carved out a specific exemption from the "otherwise expansive coverage of the Coastal Act" based on its determination that the "State's interest in settling land disputes" justified " 'forgoing the benefits of environmental review.' [Citation.]" (*Id*. at p. 1108.) As support for its conclusion, the *Burke* court observed that, "[i]n a parallel fashion, the Legislature has also carved out a boundary settlement exemption from the otherwise broad scope" of CEQA by enacting section 21080.11. (*Id.* at p. 1108, fn. 6.)

Both section 6307 and *Burke* reinforce our conclusion that the plain language of section 21080.11 limits this CEQA exemption to SLC settlements of title or boundary disputes and land exchange agreements or leases connected to those settlements. Our construction of this exemption is consistent with the statutory delegation of legislative authority to the SLC to enter into land exchanges in order to "resolve boundary or title disputes" (§ 6307, subd. (c)(7)), and it also furthers the state's interest in "settling land disputes," which justifies forgoing the benefits of requiring CEQA review. (*Burke*, *supra*, 168 Cal.App.4th at p. 1108.)

In the present case, the land exchange agreement proposed by the City is unrelated to a settlement of a dispute regarding the title or boundaries of Seawall Lot 351. Instead, the express purpose of the exchange is to remove an impediment to the development of the 8 Washington Street Project. Although that impediment is undoubtedly a "problem" for the City, it is an economic one and not one grounded on the need for the SLC to exercise authority to "settle" title and boundary disputes over filled tidelands.

Appellants argue that limiting the section 21080.11 exemption to "situations involving settlement of a title or boundary 'dispute' or 'defect' " would constitute an impermissible rewriting of the statute. They contend that the language as written broadly applies to settlements of title or boundary "problems," which easily include "a difficult or

19

perplexing situation regarding title or boundaries, such as the unsuitability of Seawall Lot 351 for Burton Act trust and public trust uses." However, in our view, it is appellants who attempt to rewrite the clear meaning of the exemption language by assigning an overbroad, ill-conceived meaning to the word "problems," and by disregarding material language in the statute that explicitly limits the scope of the exemption to "settlements." (§ 21080.11.)

Appellants forcefully argue that the Supreme Court has long recognized that the SLC has authority to approve land exchange agreements even in cases which do not involve an underlying title or boundary dispute. (Citing *City of Long Beach v. Mansell* (1970) 3 Cal.3d 462 and *Atwood v. Hammond* (1935) 4 Cal.2d 31.) However, that is not the issue we decide here. The only issue is whether the SLC properly invoked the CEQA statutory exemption for "settlements of title and boundary problems . . . and . . . exchanges or leases in connection with those settlements." (§ 21080.11.) The cases upon which appellants rely do not address CEQA at all.

Appellants next claim that the "arbitrary and capricious" standard governing judicial review of an agency decision precludes a court from substituting "its own judgment about what constitutes a 'title and boundary problem' for that of the Commission—the Legislature's delegee of the power to make this very determination." As support for this argument, appellants mistakenly rely on *County of Orange v. Heim* (1973) 30 Cal.App.3d 694 (*Heim*). First, we observe that appellants neglect to mention that the *Heim* court *invalidated* a land exchange agreement between a county and a private property owner which called for the dredging and filling of tidal land notwithstanding the fact that the SLC had approved it. (*Id*. at p. 707.) Furthermore, the land exchange agreement that was reviewed in *Heim* did not raise any issue under CEQA because the SLC approved that agreement before CEQA was enacted. (*Id*. at p. 714.) Interestingly, though, the *Heim* court stated that "[w]e have no doubt that today approval of the land exchange agreement would have to be preceded by an environmental impact study and report pursuant to [CEQA]. [Citation.]" (*Ibid*.)

20

Without acknowledging the important distinctions between this case and *Heim*, *supra*, 30 Cal.App.3d 694, appellants insist that *Heim* undermines the judgment here because that case affirms the principle that, when "exercising the limited scope of judicial review of the quasilegislative actions of administrative agencies, a court may not reweigh the evidence and substitute its judgment for that of the agency nor may it inquire into the soundness of the reasoning by which the agency's conclusions are reached. [Citations.]" (*Id.* at p. 721.) However, the *Heim* court applied this deferential standard to its review of the SLC's exercise of its delegated authority to administer tideland grants. Here, by contrast, the action we review was not an exercise of the SLC's delegated authority over tide and filled lands subject to the public trust. As discussed above, this court offers no opinion as to whether the SLC can or should approve the Seawall Lot 351 land exchange agreement. The sole question we answer is whether that proposed agreement is statutorily exempt from CEQA review. Construing the scope of this CEQA exemption is a matter of "statutory interpretation to which we apply de novo review. [Citations.]" (*North Coast Rivers Alliance v. Westlands Water Dist.*, *supra*, 227 Cal.App.4th at p. 851.)[6]

Finally, both sides rely on an environmental impact report (EIR) that has allegedly already been prepared for the 8 Washington Street Project. Appellants argue that EIR covers this land exchange agreement and that "[n]o interest would be served" by requiring a separate CEQA review in this case. Respondent attempts to counter this argument by filing a request for judicial notice of a recent court decision which allegedly evaluates the adequacy of the EIR for the 8 Washington Street Project. We reject appellants' argument and also deny respondent's request for judicial notice as irrelevant

---

[6] Parenthetically, we note that appellants' conclusory assertion that the "vast weight of the legislative history supports the [SLC's] interpretation that no 'title or boundary dispute' is required for the application of section 21080.11" is supported only by a broad record citation unaccompanied by any substantive discussion. Furthermore, their resort to "reason, practicality and common sense" only reinforces our conclusions outlined above.

to our disposition of this appeal.  (*Golden Gate Land Holdings LLC v. East Bay Regional Park Dist.* (2013) 215 Cal.App.4th 353, 366 ["Only relevant evidence is admissible by judicial notice."].)  In deciding that the proposed Seawall Lot 351 land exchange agreement between the City and the SLC is not exempt from CEQA review, we need not, and do not, address any question about the adequacy of the EIR prepared for the 8 Washington Street Project.

For the reasons stated we conclude that the land exchange agreement was not exempt from CEQA review.

# IV.

# DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to respondent.


_____
RUVOLO, P. J.


We concur:


_____
REARDON, J.


_____
RIVERA, J.

22

| | |
|---|---|
| Trial Court: | San Francisco Superior Court |
| Trial Judge: | Hon. A. James Robertson, II |
| Counsel for Appellants: | Dennis J. Herrera, San Francisco City Attorney Kristen A. Jensen and Elaine C. Warren, Deputy City Attorneys Attorneys for City and County of San Francisco and the Port Commission of the City and County of San Francisco |
| | Kamala D. Harris, Attorney General of California; John A. Saurenman, Senior Assistant Attorney General; Christiana Tiedemann, Supervising Deputy Attorney General; Joseph C. Rusconi, Deputy Attorney General Attorneys for California State Lands Commission |
| Counsel for Appellants and Real Parties in Interest | Remy Moose Manley, Whitman F. Manley, Howard F. Wilkins III, Christopher L. Stiles Attorneys for San Francisco Waterfront Partners II, LLC and Pacific Waterfront Partners LLC |
| Counsel for Respondent: | Brandt-Hawley Law Group and Susan Brandt-Hawley |

23