[Civ. No. 36639. First Dist., Div. Four. Feb. 25, 1976.]

SUNNYVALE PUBLIC SAFETY OFFICERS ASSOCIATION et al.,
Plaintiffs and Appellants, v.
CITY OF SUNNYVALE, Defendant and Respondent.

## COUNSEL

Miller, Perrin, Domino & Giacalone, Miller, Perrin, Domino, Giacolone & Ackerman and Ernest L. Miller for Plaintiffs and Appellants.

James A. Hildebrand, City Attorney, Theodore H. Kobey, Jr., and Marc G. Hynes, Deputy City Attorneys, for Defendant and Respondent.

## OPINION

EMERSON, J.*—Appellants in this action are the Sunnyvale Public Safety Officers Association (hereafter the association) and Daniel Stoops, president of the association, individually and as a member of the class of Public-Safety Officers in and for the City of Sunnyvale.[1]

The association is the recognized employee representative for the Sunnyvale Department of Public Safety, whose members serve as police officers and fire fighters in the respondent city. Certain Sunnyvale police officers asserted a grievance against the city, claiming that they were entitled to overtime pay. Bypassing the city's procedure for the administrative settlement of grievances, appellants filed in the superior court a complaint for money damages on theories of breach of contract and/or

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1]Except as found in the discussion of other cases, the terms city, city council and city manager used herein refer to the City of Sunnyvale.

negligence. The court entered judgment in favor of the city on the ground that appellants had failed to exhaust their administrative remedies before filing suit. This appeal is from the judgment.

Briefly stated, the complaint of appellants was based on the following facts. Police members of the association, because of rotating shift assignments, were sometimes required to work two 8-hour shifts within a 24-hour period, plus an extra 15 minutes at the beginning of each shift. Fire fighter members, who worked 24-hour shifts, worked an extra 15 minutes on each shift. Both groups of members claimed that they were entitled to overtime pay for time worked in excess of 8 hours per day by police members and in excess of a 24-hour shift with respect to fire fighter members.

The wages, hours and working conditions of the association's members were the subject of a memorandum of understanding, executed by the city and the association, which was in effect at the times here pertinent. That agreement recited that the city and the association ". . . [met and conferred] in good faith and did reach agreement on those matters within the scope of representation." Matters within the scope of representation were defined as ". . . all matters relating to employment conditions and employer-employee relations, including, but not limited to wages, hours, and other terms and conditions of employment." It is clear that the members' complaint was a matter relating to wages and hours and was within the scope of representation.

The administrative procedures provided by the City of Sunnyvale for the settlement of employer-employee grievances and disputes are found at three places in the rules, administrative memoranda and ordinances of the city. The Civil Service Rules and Regulations provide for an informal grievance procedure in section 20.01 as follows: "Any employee having a grievance arising from employment in the Classified Service shall seek an adjustment of the grievance initially with the immediate supervisor. Should the immediate supervisor be unable or unwilling to make a satisfactory adjustment, or be a party to the grievance, the employee may seek adjustment with the department head. Should the department head be unable or unwilling to make a satisfactory adjustment, or be a party to the grievance, the employee may then seek adjustment from the City Manager. The decision of the City Manager shall be final and conclusive, except in the case of a grievance involving a suspension, demotion or dismissal, in which case, the employee may

appeal to the Personnel Board in the manner provided in Section 20.02." This section is supplemented by administrative memorandum 30.082 which provides for a hearing at the department head level, and, if requested, the services of the state conciliation service.

A city ordinance, the Employer-Employee Relations Code, sections 2.24.240 -2.24.260 provides impasse procedures in cases of disputes over the interpretation of memorandums of understanding. The procedures include advisory arbitration with power to make a final decision vested in the city council. None of these procedures was invoked by appellants prior to the filing of the within action.

It is well settled "that the exhaustion of an administrative remedy, where one is available, is a condition precedent to obtaining judicial relief, and that a 'court violating the rule acts in excess of jurisdiction' . . . ." (*Morton* v. *Superior Court* (1970) 9 Cal.App.3d 977, 981 [88 Cal.Rptr. 533].) More recently, however, it has been held that the requirement of exhaustion of administrative remedies is inapplicable where the remedy is ineffective. (*Glendale City Employees' Assn.* v. *City of Glendale* (1975) 15 Cal.3d 328, 343 [124 Cal.Rptr. 513, 540 P.2d 609].)

In *Morton*, the appellate court did not discuss the effectiveness of the administrative remedy. The holding of *Morton* is that "if an administrative remedy is available, it must be exhausted. . . ." (*Id.,* at p. 982.)

This rule has, in our opinion, been extended (if not superseded) by *Glendale City Employees' Assn.* v. *City of Glendale, supra.* There, a municipal employees' association challenged the method of computing pay for city employees pursuant to a memorandum of understanding. The city claimed that a grievance procedure which provided for submission of a grievance form to one's supervisor, and, if necessary to the division head and city manager, was an administrative remedy that had to be exhausted.

In *Glendale,* the Supreme Court first observed that the city's procedure was tailored for the settlement of minor individual grievances. It then went on to say: "A procedure which provides merely for the submission of a grievance form, without the taking of testimony, the submission of legal briefs, or resolution by an impartial finder of fact is manifestly inadequate to handle disputes of the crucial and complex nature of the instant case, which turns on the effect of the underlying memorandum of understanding itself." (*Id.,* at pp. 342, 343.)

The *Glendale* court cited with approval the case of *Martino v. Concord Community Hosp. Dist.* (1965) 233 Cal.App.2d 51 [43 Cal.Rptr. 255]. In that case a doctor challenged deferral of his application for a position on a community hospital medical staff. The hospital contended that the physician had no right to judicial relief because he had failed to appeal to the executive committee of the hospital staff as authorized in the hospital's bylaws. The court held that the regulation was too nebulous to constitute an effective administrative remedy since it failed to "set forth any procedure for the hearing or determination of the appeal and states only that it shall be 'considered'. . . ." (*Id.,* at p. 57.)

■ We conclude that the administrative procedure provided in the instant case fits the *Glendale* framework. First, the dispute involved "turns on the effect of the underlying memorandum of understanding itself." Second, the Employer-Employee Relations Code does not provide for a hearing before the city council, the body charged with final determination in this matter. It provides only that the city council shall make a final determination based on a recommendation by an advisory arbitration panel. It does not specifically provide for the taking of testimony or the submission of legal briefs as required by *Glendale.* In addition, it does not provide the parties a direct opportunity to be heard before the city council. These deficiencies make the administrative remedy ineffective.

In view of this decision, discussion of other points raised by appellants is unnecessary.

The judgment is reversed.

Caldecott, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied March 16, 1976, and respondent's petition for a hearing by the Supreme Court was denied April 22, 1976.